Before we begin, I want to make note of the historic nature of our session this morning because this marks the first argument in which our newest judge, Judge Jonathan Kobus from Sioux Falls, South Dakota, will be participating here to my left, and we welcome Judge Kobus to the court and to argument this morning. And with that note, Ms. Polk, would you announce the calendar for this morning? Yes, Your Honor. The following cases are scheduled for argument this morning, Tuesday, March 12, 2019. Case No. 1, 182957, Minnesota, Baljinder Sandhu, etc. et al. v. Jay Kanzler, Jr., etc. et al. Case No. 2, 182331, Shuley Marambo v. William P. Barr, etc. Case No. 3, 181393, Minnesota, Thomas Noonan, et al. v. American Family Mutual Insurance Company. In addition, the following two cases will be submitted on the briefs and record without oral argument. 181941, Minnesota, William Anderson, etc. v. City of Minneapolis, et al. 181654, Minnesota, Mahmoud Khan v. City of Minneapolis, etc. et al. First case, Baljinder Sandhu, etc. et al. v. Jay Kanzler, Jr., etc. et al. All right, Mr. Parker. Good morning. Good morning. May it please the Court. Judge Arnold, Judge Shepard, Judge Kovas, thank you for giving me the opportunity to present argument in front of you this morning. It's always an honor to be before this Court. I don't want to rehash the pleadings that are before you or the briefs and just would like to focus on, I think, the two key issues in this matter for purposes of your determination and what we believe Judge Montgomery in the lower court simply got wrong. Number one is the issue with the necessity of the expert affidavit with respect to counts one and two of the complaint. And I think the Court before it, even though we are on a federal level rather than on the state level, has an important decision and an opinion to issue on the basis and viability of a claim against an attorney for something other than negligence. And the case before you, in fact, is such a case which involves not the negligence of counsel, but in fact the intentional fraudulent and colluding conduct of an attorney on behalf of his clients in order to hurt the appellant in this case, both Glow Hospitality and Mr. Sandhu. Counsel, sorry for the interruption, but the statute here that deals with expert witnesses is not a statute that requires expert witnesses, right? It has to do with cases in which under the general law expert witnesses are required. Isn't that correct? Correct. And it also deals mainly in negligence and in instances of malpractice. I'm sure that I'm right about the duty to have an expert witness is not a duty that is found in this statute. This statute simply assumes that if you're going to have one, if there's a duty to have one, in other words, you have to do these two things in order to survive a dismissal. Correct. And our point here today is that that duty is not absolute. I understand. That we have the law. So the statute is simply out of the case, under your view. The statute is out of case, Your Honor, and we have to have flexibility in the law to be able to apply facts in different scenarios. Every case is different. So even though there are a myriad of cases here that indicate that breaches of fiduciary duty are those kinds of cases, sound and professional negligence, your point is that not all such cases have to do with a standard of care, in particular the intentional torts. Right. So the issue of negligence, right, and we're dealing with the issue of cyanter. The folks in Washington are dealing quite a lot recently in issues of cyanter and collusion and misrepresentations to a tribunal, and I'm equating it, obviously, to criminal violations. But the question of negligence versus intent, we don't require expert testimony, for instance, for cyanter in criminal cases because we're looking at a different standard. And if an attorney has intentionally engaged in conduct that has nothing to do with negligence, he can say negligence is, you know what, I trusted my client, but I didn't do enough research, or I made a mistake. That's negligence. Then we need an expert to say, you know what, this attorney, based on the reasonable standard of all of the attorneys as we see them, should have acted in such a manner. Here, this is not a question of should this attorney act differently. The question is, did this attorney engage in fraud, deception, misleading, and omitting conduct with respect to facts that then led the tribunal or the lower state, the court, in Bemidji to make determinations that then delayed the appointment of a receiver that allowed his clients to siphon funds and to benefit from the false statements that were presented, both to the court, both to the First National Bank of Bemidji where false documents were created. That's the issue. So what is an expert going to come and say that, you know, it's wrong to lie to the state court, to the federal court? We don't need an expert for that purpose. Counsel, is this an issue of first impression in your view? I mean, what's your best case or what's your Minnesota case that stands for the proposition you just laid out? I think we have three main cases that this court can rely on. One is the Noski case. The other is the Hill case. And the third is the Meyer v. Daggard case. And we also have the Witsman case which deals with the aiding and abetting issue where attorneys are clearly liable for aiding and abetting the fraudulent conduct of their clients if they either closed their eyes to it or actively participate. So I would direct this court to three decisions. And I can cite them, but they're in the briefs. So the Noski court was very clear that you can have a cause of action against an attorney for fraud, misrepresentation, breach of contract, breach of fiduciary duty, or professional negligence. So the claim was not that the attorney was representing, was actually, was representing or should have been representing the interests of the plaintiffs in this lawsuit? Is that what you're saying? The claim is exactly what the claim is in the Hill case where the attorney intentionally engaged in a conflict of interest against his client, which in this case is Glow Hospitality. That court indicated that the jury was within its purview without an expert and that the language is clear in the Hill decision. I thought conflict of interest was an area that was not accepted from this expert affidavit requirement. Am I wrong on that? It is if the conflict is negligent. In other words, if there's a mistake. If the conduct is intentional. And I want to read the Hill case. That expert testimony is not necessary in cases where the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony. And the Hill case went further to indicate that basically the issue of the conflict of interest in that case was clear on its face, was intentional, and did not require an expert to opine. And there, the attorney, there was an issue of investments. So the Hill court held that there was no question that the attorney in Hill engaged in dual representation so no expert testimony was required. They held even on the professional negligence claim. But the conduct here that we're dealing with is not negligent. And where the conduct is intentional, in other words, where there is false statements being made to a court, the statute in Minnesota, 481.06, is very clear. You cannot lie to a tribunal. We don't need an expert to come forward and say, you know what, ladies and gentlemen, you can't lie to a court. Is there a, speaking to that claim, the statutory fraud claim, is it conceded that that statute gives a private right of action? Is that even an issue? That's not an issue that was raised by the lower court or has been argued by the appellees. So my understanding is that there is a private cause of action. Okay, thank you. And with respect to the record, I just want to focus a little bit on the decision making of Judge Montgomery in this case with respect to the weighing of the evidence and the facts. I would represent to this court that Judge Montgomery went beyond the scope of what her role is in summary judgment. And she went, basically took the position and made decisions that a jury would make on the credibility of the testimony of Mr. Sandhu versus Mr. Kanzler and weighed the facts. She made a determination that the submissions that are undisputedly false were in the affidavits of December 2010 and then January 2012. She said that those are not sufficient to rise to the level of fraud. That's a question of fact that's reserved for the jury. And that's one, I think, important issue that this court needs to address is how do we deal with materiality? When a plaintiff is supposed to establish a genuine issue of material facts on summary judgment, what is that level? And when the court is supposed to weigh the evidence in favor of the plaintiff, how much effort is required? What is materiality? And I would submit to you based on the case law of the various circuits that are cited in the brief and the restatement that the issue of materiality and the sufficiency of that evidence that is really reserved for the jury based on all of the available case law. The job of the plaintiff is to establish issues of material facts. Well, what are your facts on your fraud claim? The facts on the fraud claim are that we have a dispute as to ownership. So Mr. Kanzler knew that the business was going to be structured in a certain way and then misrepresented that structure. Well, tell me, but I mean, where do I find that? Sandhu's testimony, is that it? You have Sandhu's testimony. You have Kanzler's. You have his affidavits. You have the ownership documents that were drafted. You have the tax returns that show a different picture than what was submitted by Kanzler to the court. Even after he got the tax returns, which clearly showed that Sandhu was an owner, he continued to represent that he wasn't. We have a duty. You're talking about duties of an attorney. We have a duty to at least retract or correct the false information that we've presented. We have a duty not to act as witnesses in the case that we're representing somebody on. And even though he was... Well, now, those statements you just made, that sounds like kind of typical legal malpractice kinds of issues that an expert would be typically... in which an expert would typically be utilized. But that's a statutory requirement, not to lie to a tribunal. And if you've submitted false information, you need to retract that information. That's the statute that we just discussed in count two. And I understand there's a little bit of an overlap, but we have to be able to... In other words, what would an expert opine in this case? You can't lie to a tribunal. It's not the standard of care of a typical attorney. That would be ridiculous to an expert. We have the Dahlberg standard. We have different standards for experts. An expert's supposed to assist somebody. And this isn't really an attorney-client question either, is it? And it's not. And that's the other issue that we have. Mr. Sandhu's, it's undisputed, was not a client. So, again, we get into issues of there's a claim for fraud. There's a claim for collusion that has nothing to do with the statute or the malpractice. And the judge, again, weighs evidence that says it's not sufficient to move forward when the record is replete with inaccuracies. And it's either an inaccurate statement or an omission of the truth that's at issue and for which Mr. Kanzler is liable. You can't blindly close your eyes to something that you know would assist the court or assist the parties making a decision and then claim, you know, I didn't know I trusted my client. So there's a very serious issue of credibility with respect to his testimony. It's either he had lack of knowledge or he directly conflicts with the documentation in his statements under oath. And that's a very serious issue. I have about a minute left, and if I can reserve it for rebuttal, I would appreciate it. Very well. Thank you. Thank you, counsel. Mr. McClain. May it please the court, my name is Ronald McClain. I'm an attorney representing the defendants. I'm from Fargo, North Dakota. I am here to seek affirmation of Judge Montgomery's decision. The first issue we raise is the statute. In count one, it's a claim by Glow against Kanzler and his law firm. Well, it's against Kanzler. And count two is a claim against Kanzler. Again, one is breach of fiduciary duty slash conflict of interest. The other is breach of fiduciary duty. Judge Montgomery correctly started the opinion by writing, although the statute appears to limit the affidavit requirement to actions alleging negligence or malpractice, the courts have routinely expanded the requirement to any action derivative of a legal malpractice claim. She cites Pearson v. Oxford. There, breach of fiduciary duty, aiding and abetting, tortuous conduct, fraud and misrepresentation, and civil conspiracy were all found to be subject to the affidavit requirement. She also cited Club v. Vista, where Judge Nelson of this district wrote, in a breach of a fiduciary claim, plaintiffs allege the Maslin law firm had a fiduciary duty and breached it by making misrepresentations, concealing and failing to disclose material facts, failing to inform clients of material information, and by acting for their own benefit and the benefit of others, which actions constitute a conflict of interest. I'm sorry, go ahead. The court concluded. The court finds that plaintiff's claims are derivative and the claims are substantially similar, and because of that, there has to be an affidavit. But would all breach of fiduciary duty claims necessarily be derivative of malpractice claims, of negligence claims? Breach of the standard of care, I mean. Pardon me, I did interrupt. I apologize. Yes, I take the position that the Minnesota courts have so ruled that if there's an attorney. It can never be a distinct. The same facts couldn't give rise to both but the one being distinctive, the intentional breach of fiduciary duty not requiring any kind of expert testimony with respect to standard of care. I think the word is derivative, and it's derivative of the attorney-client relationship. Well, that's the question. That's the conclusory. I mean, no, it has to be derivative of the claim. I think the Minnesota. I don't think that just because there's an attorney-client relationship that you have to have any lawsuits. Here we have the additional complication that Sandu is not a client. So this is a different case. But in any event, even if you have a client, it seems to me that there are claims that are distinct, claims against your own lawyer that are sufficiently distinct from a claim that requires expert testimony on standard of care that that testimony is not required. Well, I would urge the reading of the statute and action against a professional alleging negligence or malpractice. There must be an expert, and they have expanded to this, to the same identical kinds of fiduciary claims. We just heard what the Maslin Law Firm was charged with, and they said that it's within the statute. As to the cases relied upon by Mr. Belgender Sandu, first off, they go to this Hill v. Oakey. That is a 1977 case. The statute's 1997. And there they felt, and that's the first thing Montgomery found, that the statute doesn't even apply. And then as to that case, that case involved genuine conflicts of interest by an attorney named Tanta, who represented both sides in the transaction, had oral and did not put it in writing for both clients, and they found there that that case could be adequately evaluated without an expert testimony. A lot of these Minnesota cases, as I read them, plead to claim a breach of fiduciary duty, but it's quite clear that the breach they're claiming is the duty not to act negligently. So you see, those really are, that claim really is derivative of the negligence or professional malpractice claim. It was concealing, failing to disclose material facts, failing to inform plaintiffs of material information, acting for their own benefit and the benefit of others, which they had a conflict of interest with. I would just respectfully urge that's exactly what I just heard minutes ago. The other case they relied upon is they urged that they don't need an expert. I think Justice, Judge Montgomery just nailed this. Determining whether a client attorney breached a fiduciary duty, that's what they pleaded, is far more complex and nuanced than missing a deadline or stealing clients' funds. This claim turns upon counselors' reliance upon representations by his clients, the Vindar and Harry, and representations of their agent Shiv Singh, which were documented in the corporate client's upglow. There was talk of the Nosky case. Nosky is a 2006 case, so the statute is in play, and it's kind of a weird event. It happens up by St. Cloud, Minnesota. Two neighbors don't like each other, and one comes over with his gun and shoots it seven times in the air and then clicks it three times. He never aims it, but he shoots it, and he's charged with assault. His lawyer, Joe Friedberg, a really distinguished lawyer in Minneapolis, determines there was no assault, and let's not go with self-defense. They had an expert who filed an affidavit that the client urged that self-defense be in the charge to the jury, and they claim that Mr. Friedberg deliberately did not do that. So the Court of Appeals in that case found, well, first off, they did have an affidavit that what he did was wrong, but they hadn't pleaded it, so they didn't get it. And as Judge Montgomery wrote, Nosky did not involve whether these were related to separate and distinct claims and nevertheless required to be prosecuted with an expert witness. There is no, as Judge Montgomery said, it doesn't stand for the position you don't need an affidavit. They had an affidavit, but they didn't plead this intentional act that he really wanted to do harm to his client, and that's about what we hear today, and I would just urge this. Is it clear or is it undisputed that this plaintiff, Sandhu, was not a client? Yeah, they don't even claim he's a client. Account one is Glow, and account two is Glow. So the account one and account two of the fiduciary duties are just Glow's claim, not Belgender. I should use his last name. When you get to Mr. Sandhu's claims directly against the law firm, those are count three and count four, and count three is fraud, reckless misrepresentation, slash, omission, actual fraud. So that's Mr. Sandhu's claim, and the court wrote, Judge Montgomery wrote, there is no evidence in the record that Kanzler knew, directed, or so oversaw Singh and Harry's alleged misappropriation of Sandhu's investment. To the contrary, Kanzler had no involvement in the regular course of the operations or finances of Glow or the hotel. Kanzler's role as Glow's limited attorney was limited to drafting, amending corporate documents, which were requested and later executed by his clients. Judge Montgomery writes, in sum, the record does not reflect any evidence that Kanzler thwarted Sandhu's involvement in Glow or committed fraud by omitting or misrepresenting the truth about Sandhu's ownership. Mr. Kanzler did know several things, though. For instance, Sandhu, on somber judgment, we have to assume that Sandhu's testimony is correct. He claims that he spoke with Kanzler and told him about his interest in Glow. Isn't that right? I think if you read Judge Montgomery's opinion, first off, she does take the facts as... Well, is that not correct, that he, that Mr. Sandhu claims that he told Mr. Kanzler about his interest? And I think when you go to Mr. Kanzler's affidavits, he was vouching as what the corporate ownership records disclosed. He would need, and that's what he says in the affidavit, and that's what he would know. He would know what the organization documents were and what the corporate documents meant. But by this time, he had filed the affidavits. Didn't he and Mr. Katkar and his brother execute a document indicating that Mr. Sandhu had an interest in Glow? They learned of that after the Beltrami litigation was started. And he vouched only in the affidavit that the corporate records are inconsistent with this. And, in fact, as to that note, their own lawyer, Mr. Gilbert from Duluth, after that handwritten document signed, only urged that Mr. Devendar had 97, Harry had three, and even their own lawyer didn't, Sandhu's own lawyer didn't allege Sandhu had an ownership interest. Boy, that's pretty compelling, I would say, as to a summary judgment motion, when your own lawyer doesn't claim you have an ownership interest. On count four is this breach of fiduciary duty, collusion, aiding, abetting. Long ago, in 1970, on McDonald v. Stewart, this court wrote, and this is pre-affidavit retirement, but this is as to actual fraud. The determinative principle for this is case, as the trial court concluded, that an attorney acting with the scope of his employment as an attorney is immune from liability to third parties for actions arising out of that professional relationship. Just think how easy it would be to say about the other lawyer they lied in a piece of paper and they knew better. The court wrote in McDonald v. Stewart, this immunity, to be sure, may not be invoked if the attorney exceeding the bounds of the unique agency relationship either is dominated by his own personal interest, nowhere is that ever alleged, or knowingly practiced with his client, preparation of fraudulent and unlawful acts. As Judge Montgomery said at page 25, there is no evidence that counselors substantially assisted or encouraged Singh and Harry to breach their duties to Sandhu. Count five is vicarious liability of the law firm. In conclusion, I would respectfully urge that Judge Montgomery's decision be affirmed. Two brief comments. In the Meyer v. Daggert case, and that goes to Judge Arnold's point with respect to the statute, the statute deals with negligence and malpractice. It's not intended to cover intentional conduct in the necessity of the expert. There the court found that Daggert had a fiduciary relationship with the plaintiffs that were his clients, and that he owed the fiduciary duties to plaintiffs, and that he knew or should have known that the sale of the junior mortgage was illegal and unregistered, and found that there was a breach and didn't require an expert. The court then denied summary judgment on the related, so the court denied summary judgment on the fraud and related intentional tort claims, and then dismissed the malpractice claim. And that's the point we're trying to make to Judge Montgomery is that, Your Honor, we have decisions in the state court where the courts are bifurcating. They're splitting the claims. They're making distinctions. And for some reason, Judge Montgomery just lumped everything together and said this is all one claim, it all reads in negligence, and dismissed it, which is completely wrong. And it's not consistent with the facts or the law in the state court. And then if I may just make one last point. Mr. McClain this morning was arguing facts in front of you. The facts, that argument, whether Mr. Kanzler knew or when he found out or whether his testimony is credible or not, those are all reserved for the jury. And we have plenty of facts to argue about. And all of the witnesses and the facts deserve to be and have to be presented to a jury for a full determination. This is not a case on its face with all of the facts that have been presented to the lower court that should have been summarily dismissed on summary judgment. Thank you for your time this morning. Thank you, counsel. The case has been well argued and is submitted. And you may stand aside.